**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **U.S. SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 1:21-cv-12088-WGY** |
| **VLADISLAV KLIUSHIN (a/k/a VLADISLAV KLYUSHIN),** *et al.*, | |
| **Defendants.** | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANTS RUMIANTCEV, IRZAK, SLADKOV, AND YERMAKOV

## <u>TABLE OF CONTENTS</u>

FACTUAL BACKGROUND ............................................................................................. 1

PROCEDURAL STATUS ............................................................................................... 4

LEGAL STANDARD ...................................................................................................... 6

ARGUMENT .................................................................................................................. 7

I.      THE COURT HAS JURISDICTION .................................................................. 7

      A.      The Court has Subject Matter Jurisdiction ............................................... 7

      B.      The Court has Personal Jurisdiction ......................................................... 8

II.     THE SEC HAS PROPERLY SERVED DEFAULTING DEFENDANTS ................ 10

III.    THE COMPLAINT ESTABLISHES DEFAULTING DEFENDANTS'
        LIABILITY ...................................................................................................... 10

      A.      Violations of Securities Act Section 17(a), Exchange Act Section 10b-5, and
                Rule 10b-5 (Counts I, II) ........................................................................ 10

      B.      Trader Defendants Are Liable Under Exchange Act Section 20(b)
                (Count III) ............................................................................................. 13

      C.      Trader Defendants Aided and Abetted Defendant Yermakov's Violations
                (Counts IV, V) ....................................................................................... 14

IV.     THE COURT SHOULD GRANT THE REQUESTED RELIEF ............................. 15

      A.      Defaulting Defendants Should be Permanently Enjoined from Future
                Violations of the Securities Laws ............................................................. 15

      B.      Defaulting Defendants Should be Ordered to Pay Disgorgement and
                Prejudgment Interest .............................................................................. 16

      C.      The Court Should Order Defaulting Defendants to Pay a Civil Penalty ....... 18

CONCLUSION ............................................................................................................. 20

## **TABLE OF AUTHORITIES**

### **Cases**

*Aaron v. SEC,*

    446 U.S. 680 (1980) ......................................................................................................... 11

*Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.,*

    771 F.2d 5 (1st Cir. 1985) .................................................................................................. 6

*CompuDyne Corp. v. Shane,*

    453 F. Supp. 2d 807 (S.D.N.Y. 2006) ............................................................................. 11

*Ernst & Ernst v. Hochfelder,*

    425 U.S. 185 (1976) ......................................................................................................... 11

*In re Lernout & Hauspie Sec. Litig.,*

    337 F. Supp. 2d 298 (D. Mass. 2004) ......................................................................... 9, 10

*In re The Home Restaurants, Inc.,*

    285 F.3d 111 (1st Cir. 2002) .......................................................................................... 6, 7

*Int'l Shoe Co. v. Washington,*

    326 U.S. 310 (1945) ........................................................................................................... 8

*Liu v. SEC,*

    140 S. Ct. 1936 (2020) ............................................................................................... 16, 17

*Pinker v. Roche Holdings Ltd.,*

    292 F.3d 361 (3d Cir. 2002) .............................................................................................. 9

*S.E.C. v. Durgarian,*

    477 F. Supp. 2d 342 (D. Mass. 2007),

    *aff'd sub nom. S.E.C. v. Papa,* 555 F.3d 31 (1st Cir. 2009) ............................................ 11

*SEC v. China Infrastructure Inv. Corp.*,

    189 F. Supp. 3d 118 (D.D.C. 2016) ................................................................ 15

*SEC v. Dorozhko*,

    574 F.3d 42 (2d Cir. 2009) ................................................................ 11, 13

*SEC v. Druffner*,

    517 F. Supp. 2d 502 (D. Mass. 2007) ................................................................ 17

*SEC v. Dubovoy*,

    2019 WL 6271602 (D.N.J. Nov. 25, 2019) ................................................................ 11, 13

*SEC v. Dubovoy, et al.*,

    No. 15-cv-06076 (D.N.J. June 23, 2021) ................................................................ 20

*SEC v. Duncan*,

    2022 WL 952266 (D. Mass. Mar. 30, 2022) ................................................................ 17

*SEC v. Esposito*,

    260 F. Supp. 3d 79 (D. Mass. 2017) ................................................................ 6

*SEC v. Ficken*,

    546 F.3d 45 (1st Cir. 2008) ................................................................ 11

*SEC v. First Jersey Sec., Inc.*,

    101 F.3d 1450 (2d Cir. 1996) ................................................................ 10, 11

*SEC v. Happ*,

    392 F.3d 12 (1st Cir. 2004) ................................................................ 17, 18

*SEC v. Hong*,

    No. 16-cv-09947 (S.D.N.Y. May 5, 2017) ................................................................ 19

*SEC v. Maillard,*

    2014 WL 1660024 (S.D.N.Y. Apr. 23, 2014)......................................................... 9

*SEC v. Morrone,*

    997 F.3d 52 (1st Cir. 2021) ................................................................................... 7

*SEC v. Navellier & Assocs. Inc.,*

    2021 WL 5072975 (D. Mass. Sept. 19, 2021) ................................................... 17

*SEC v. Rajaratnam,*

    918 F.3d 36 (2d Cir. 2019)................................................................................. 19

*SEC v. Sargent,*

    329 F.3d 34 (1st Cir. 2003)........................................................................... 15, 17

*SEC v. Scoville,*

    913 F.3d 1204 (10th Cir. 2019) .......................................................................... 7

*SEC v. Sharp,*

    626 F. Supp. 3d 345 (D. Mass. 2022) .............................................................. 14

*SEC v. Spencer Pharm. Inc.,*

    57 F. Supp. 3d 127 (D. Mass. 2014) ............................................................ 8, 17

*SEC v. Stone,*

    2023 WL 6387276 (S.D.N.Y. Sept. 29, 2023)................................................. 13

*SEC v. Tropikgadget FZE,*

    2016 WL 4582248 (Aug. 31, 2016)..................................................................... 6

*SEC v. Weed,*

    315 F. Supp. 3d 667 (D. Mass. 2018) .............................................................. 11

*SEC v. Zandford,*

> 535 U.S. 813 (2002)..................................................................................... 12

*SEC v. Zavodchikov,*

> 2019 WL 3451501 (D.N.J. July 31, 2019)................................................... 9, 19

*United Elec., Radio and Machine Workers of America v. 163 Pleasant St. Corp.,*

> 960 F.2d 1080 (1st Cir. 1992) ...................................................................... 8

*United States v. Klyushin, et al.,*

> No. 21-cr-10104-PBS (D. Mass.) .................................................................. 5, 6

*United States v. Naftalin,*

> 441 U.S. 768 (1979) ..................................................................................... 10

*Valicenti Advisory Servs. v. SEC,*

> 198 F.3d 62 (2d Cir. 1999)............................................................................ 12

**Statutes**

15 U.S.C. § 77o........................................................................................................ 14

15 U.S.C. § 77t......................................................................................................... 15

15 U.S.C. § 77v........................................................................................................ 7, 8

15 U.S.C. § 78aa ...................................................................................................... 7

15 U.S.C. § 78t......................................................................................................... 14

15 U.S.C. § 78u........................................................................................................ 15, 16

15 U.S.C. § 78u-1 .................................................................................................... 18, 19

Pursuant to Federal Rule of Civil Procedure 55(b)(2), Plaintiff U.S. Securities and Exchange Commission ("SEC") respectfully moves the Court to enter default judgments against Defendants Nikolai Rumiantcev, a/k/a Nikolay Rumyantcev ("Rumiantcev"), Mikhail Irzak ("Irzak"), Igor Sladkov ("Sladkov"), and Ivan Yermakov, a/k/a Ivan Ermakov ("Yermakov") (collectively, "Defaulting Defendants").[1]  As detailed in the Complaint, Defaulting Defendants engaged in a multi-year fraudulent scheme to deceptively obtain material nonpublic pre-release earnings announcements of companies with shares of stock publicly traded on U.S. securities exchanges by hacking into the computer systems of U.S.-based firms, and to use the hacked information to profit by trading in advance of the public release of the earnings information, collectively reaping unlawful profits of over $121 million.  Defaulting Defendants were properly served, but failed to appear, plead, or otherwise defend this case.  The Clerk of Court entered their defaults pursuant to Federal Rule of Civil Procedure 55(a).  The SEC now respectfully requests that the Court enter default judgments enjoining Defaulting Defendants from future violations of the federal securities laws and ordering them to disgorge their ill-gotten gains, with prejudgment interest, and pay civil monetary penalties of three times the illegal profits resulting from their misconduct.

## FACTUAL BACKGROUND

As detailed in the SEC's Complaint, from at least February 2018 through at least August 2020 ("Relevant Period"), Defaulting Defendants participated in a fraudulent hack-to-trade scheme in which—in hundreds of instances—they deceptively obtained material nonpublic pre-release earnings announcements of public companies through hacking, and used the hacked

---

[1] The SEC intends to move for summary judgment against Defendant Vladislav Kliushin, a/k/a Vladislav Klyushin ("Kliushin"), who previously waived service and filed an Answer. Dkt. 6, 10.

information to trade in advance of the public release of the earnings information.  Compl. ¶¶ 1, 3. Specifically, Defendant Yermakov, a Russian citizen who, at least during the Relevant Period resided in Russia, made material misstatements and used deceptive means, such as compromised employee credentials, anonymized IP address, and other techniques, to gain unauthorized access to (*i.e.*, hacked into) the systems of two U.S.-based service-provider firms ("Servicers") that assist publicly traded companies with the preparation and public filing of various reports with the SEC.  *Id.* ¶¶ 3, 4, 20, 21, 31, 34, 43-56.  He then unlawfully accessed and downloaded nonpublic corporate earnings announcements containing material nonpublic information about the public companies' earnings and other information.  *Id.*  This information was material because it would have been important to the reasonable investor and relates, among other things, to issuers' financial condition, solvency, and profitability, and disclosure of such information frequently impacts stock prices, analysts' estimates, and market expectations.  *Id.* ¶ 32.  Defendant Yermakov then, directly or indirectly, provided the hacked, deceptively-obtained pre-release earnings announcements and/or access to those announcements through the Servicers' systems to Defendants Kliushin, Rumiantcev, Irzak, and Sladkov (collectively, "Trader Defendants"), who are all Russian citizens and at least during the Relevant Period resided in Russia.  *Id.* ¶¶ 5, 34.

Trader Defendants profitably traded in the securities of the Servicers' public company clients on the basis of what they were aware was the hacked, deceptively-obtained material, nonpublic information from Defendant Yermakov, trading in advance of the public release of hundreds of earnings announcements.  *Id.* ¶¶ 6, 15-19, 34, 57-64, 7-123.  Specifically, if the pre-release earnings indicated the public company client's stock was likely to increase, Trader Defendants bought the company stock or a type of security called "contracts for difference" ("CFD") transactions referencing the company.  *Id.* ¶ 34(d).  If the pre-release earnings indicated

the client company's stock price was likely to decline, Trader Defendants sold short shares of the company's stock or CFDs referencing the company.  *Id.*  Once the earnings announcements were made public and the stock prices moved (as the market learned of the previously undisclosed material nonpublic information), Trader Defendants closed out their trading positions, reaping substantial profits.  *Id.* ¶ 34(e).  Trader Defendants conducted these unlawful trades through their own accounts and the accounts of their co-Defendants and others, including an account of a media/information technology company ("IT Company") where Defendants Kliushin, Rumiantcev, and Yermakov served as directors.  *Id.* ¶¶ 15-19; *see* Declaration of Connor Hurley ("Hurley Decl."), attached as Ex. A, at ¶ 3.  Many of the accounts were held at the same brokerage firms, which cleared their trades through U.S brokerage firms, and CFD transactions resulted in hedging transactions in U.S. markets.  *Id.*  ¶¶ 15-19, 23, 24.  Trader Defendants participated in and provided substantial assistance to the fraudulent scheme and Defendant Yermakov, including by monetizing the hacked information through unlawful trading based on that hacked information and by participating in transactions and business dealings to share their profits.  *Id.*  ¶¶ 6-10, 65-70.

Defaulting Defendants' participation in the scheme and use of the hacked information is further demonstrated by *inter alia*, their personal and professional relationships (including through the IT Company); their knowledge of Yermakov as a hacker charged in a separate criminal case in the United States; the proximity of the trading to the hacking; that images of the deceptively-obtained pre-release earnings announcements were found in the possession of certain Trader Defendants; Yermakov's and other Trader Defendants' access to certain trading accounts held by others; Trader Defendants' overwhelming focus on trading in the securities of the Servicers' publicly-traded company clients (as opposed to earnings announcements where the

3

filings were not made by the Servicers); and communications about the illicit trading and profits. *Id.* ¶¶ 7, 8, 9, 15-19, 36-42.  Indeed, it was statistically almost impossible that the trading at issue occurred by chance.  *Id.*  ¶¶ 65-70; Hurley Decl. ¶ 18.  Further, Defaulting Defendants used various methods to conceal their participation in the fraudulent scheme, including, among others, using anonymized IP addresses and other technological means and multiple brokerage accounts, and Defendants Kliushin and Rumiantcev lied to brokerage firm personnel when questioned about their trading strategy in or around April 2020.  *E.g.*, *id.* ¶¶ 43-56, 63, 122.  Thus, Defaulting Defendants all knowingly or recklessly were essential participants in the fraudulent scheme, and they all acted with the requisite scienter through the intent to deceive, manipulate, or defraud.  *E.g.*, *id.* ¶¶ 9, 10, 123.  As a result of the fraudulent scheme, Defendants collectively reaped unlawful profits of over $121 million.  Hurley Decl. ¶ 11, Table 2.

**PROCEDURAL STATUS**

On December 20, 2021, the SEC filed its Complaint charging Defendants with violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §77q(a)] (Count I); Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] (Count II); and Trader Defendants with violating Securities Act Section 17(a), Exchange Act Section 10(b), and Rule 10b-5 pursuant to Exchange Act Section 20(b) (Count III), and aiding and abetting violations of Securities Act Section 17(a) and Exchange Act Section 10(b) and Rule 10b-5 (Counts IV and V).  Dkt. 1.  The Court granted the SEC's request for alternative service on Defaulting Defendants and deemed the SEC's service via email effective April 21, 2022.  Dkt. 13, 21.  Defaulting Defendants failed to plead or otherwise defend, and on July 13, 2022, the Clerk of Court issued a Notice of Default.  Dkt. 28.

That same day, the Court held a status conference, at which the Court administratively

closed the case as of July 30, 2022, pending the outcome of the parallel criminal case against

Defendant Kliushin, *United States v. Klyushin, et al.*, No. 21-cr-10104-PBS (D. Mass.)

("Criminal Action").[2]  Dkt. 27.  Following the status conference, the Court entered its "Standing

Order Regarding Motions for Default Judgment" ("Standing Order") setting forth the

requirements for motions for default judgment or requiring the moving party to file an affidavit

showing good cause why timely action under the Standing Order could not be taken.  Dkt. 29.

On August 4, 2022, the SEC filed the Affidavit of James P. Connor Regarding Timing of Motion

for Default Judgment ("Affidavit"), explaining that the SEC could not file the motion for default

judgment as to the Defaulting Defendants because the case had been administratively closed

pending the outcome of the Criminal Action.  Dkt. 30.  On August 13, 2022, the Court entered an

Order for Closure, without prejudice, stating the case could be reopened upon motion by any

party demonstrating the impediment to trial had been removed.  Dkt. 31.

   On February 14, 2023, a jury found Defendant Kliushin guilty on the four counts charged

in the indictment in the Criminal Action.  *Klyushin*, No. 21-cr-10104-PBS (D. Mass.) at Dkt.

203.  On September 7, he was sentenced to 9 years imprisonment; a final judgment and an order

of forfeiture in the amount of $34,065,419.50 were subsequently entered, and the Court deferred

restitution, ordering the parties to try to reach an agreement.  *Id.* at Dkt. 252, 255.

   On September 20, 2023, upon the SEC's motion, this Court reopened this case and lifted

the partial stay.  Dkt. 35, 36.  The Court subsequently set a briefing schedule for motions for

default judgment and summary judgment after entry of the restitution order in the Criminal

---

[2] In light of the parallel Criminal Action, the Court granted the United States' motion to
intervene and for a partial stay of discovery in this case.  Dkt. 18.  Defaulting Defendants
Yermakov and Rumiantcev were also indicted in the Criminal Action, but they remain fugitives.

Action.  Dkt. 38, 40.  On October 31, the Court in the Criminal Action entered an order of

restitution against Defendant Kliushin based upon the parties' agreement, and entered an

amended judgment on November 13, 2023.  *Klyushin*, No. 21-cr-10104-PBS (D. Mass.) at Dkt.

266, 267.  The SEC now moves for default judgment against Defaulting Defendants.

## LEGAL STANDARD

When default has been entered, defendants are "'taken to have conceded the truth of the

factual allegations in the complaint as establishing the grounds for liability.'"  *SEC v. Esposito*,

260 F. Supp. 3d 79, 84 (D. Mass. 2017) (quoting *In re The Home Restaurants, Inc.*, 285 F.3d

111, 114 (1st Cir. 2002)); *Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5, 13

(1st Cir. 1985) ("each of [the plaintiff's] allegations of fact must be taken as true and each of its

seven claims must be considered established as a matter of law").  "Assuming the facts alleged in

the complaint state a viable cause of action, the defendant's liability will be established."  *SEC v.*

*Tropikgadget FZE*, 2016 WL 4582248, *2 (Aug. 31, 2016); *see In re The Home Restaurants,*

*Inc.*, 285 F.3d at 114 ("it is precisely the right to contest liability that a party gives up when it

declines to participate in the judicial process").  With regard to relief, Rule 55(b)(2) provides that

the court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it

needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the

truth of any allegation by evidence; or (D) investigate any other matter."  However, a hearing is

not necessarily required, particularly where the pleadings and the moving party's affidavits

establish the amount of the default judgment.  *See In re The Home Restaurants, Inc.*, 285 F.3d at

114–15.  Thus, "[w]here a court has jurisdiction over the subject matter and parties, the

allegations in the complaint state a specific, cognizable claim for relief, and the defaulted party

had fair notice of its opportunity to object, the court has the discretion to order a default

judgment without a hearing of any kind."  *Id.* at 114 (internal quotation omitted).

**ARGUMENT**

The Court should enter the requested default judgments against each of the Defaulting

Defendants.  The well-pled allegations in the Complaint establish Defaulting Defendants'

liability for all of the alleged violations.  The Complaint, the Hurley Declaration, and the exhibits

thereto establish the proper measure of Defaulting Defendants' ill-gotten gains (disgorgement),

the corresponding calculation of prejudgment interest, and the appropriate civil penalties.   The

Defaulting Defendants' failure to appear and participate in this case should not prevent the

Commission from obtaining relief against them as requested in the Complaint.

**I.       THE COURT HAS JURISDICTION**

**A.       The Court has Subject Matter Jurisdiction**

The Court has subject matter jurisdiction because this enforcement action is premised

upon Defaulting Defendants' violations of the Securities Act Section 17(a) [15 U.S.C. § 77q(a)]

and Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §

240.10b-5].  Compl. ¶¶ 12, 13, 126-142.  The antifraud provisions of the Securities Act and the

Exchange Act at issue here both apply extraterritorially when the statutory conduct-and-effects

test is met—*i.e.*, when conduct within the United States constitutes a significant step in

furtherance of the violation (even if the securities transaction occurs outside the United States

and involves foreign investors), or conduct outside the United States has a foreseeable substantial

effect within the United States.  *See* 15 U.S.C. §§ 77v(c), 78aa(b); *SEC v. Morrone*, 997 F.3d 52,

60, n.7 (1st Cir. 2021); *SEC v. Scoville*, 913 F.3d 1204, 1215-18 (10th Cir. 2019).  Here,

Defaulting Defendants, though located outside the United States, engaged in conduct that had a

foreseeable substantial effect within the United States, using deceptive techniques to hack into

7

the U.S.-based Servicers' systems, harming U.S. securities markets, and injuring innocent United States-based investors' confidence in the U.S. securities markets.  Trader Defendants used the stolen information to make securities trades that were cleared through U.S.-based brokerage firms and placed on multiple U.S. securities exchanges, and to purchase or sell certain derivatives that resulted in securities trades on multiple U.S. securities exchanges, in a manner that used the means or instrumentalities of interstate commerce.  *See, e.g.*, Compl. ¶ 13. Accordingly, the Court has subject matter jurisdiction pursuant to Sections 20(b) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b) and 77v] and Sections 21(d), 21(e), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78u-1, and 78aa].

## B.     The Court has Personal Jurisdiction

The Court has personal jurisdiction over Defaulting Defendants.[3]  The Securities Act and Exchange Act authorize nationwide service of process and permit the exercise of personal jurisdiction to the full extent of the Due Process Clause of the Fifth Amendment.  *See* 15 U.S.C. §§ 77v(a), 78aa; *see SEC v. Spencer Pharm. Inc.*, 57 F. Supp. 3d 127, 132-133 (D. Mass. 2014). Where Congress has authorized nationwide service of process, jurisdiction is proper if the defendant has sufficient minimum contacts with the United States as a whole, and where exercising jurisdiction "'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 133-34 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) and assessing relatedness, purposeful availment, and reasonableness to require defendant to defend a suit in the forum); *see also United Elec., Radio and Machine Workers of America v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1085 (1st Cir. 1992); *SEC v. Zavodchikov*, 2019 WL 3451501, at *3 (D.N.J. July

---

[3] Venue is also proper in this district pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].  Compl. ¶ 14.

31, 2019) (personal jurisdiction over Russian defendant in hack-to-trade case).

Here, Defaulting Defendants participated in a fraudulent scheme that targeted and manipulated the U.S. securities market.  Yermakov played a critical role in the scheme, hacking the U.S.-based Servicers' systems and stealing pre-release earnings announcements for companies whose securities are traded on U.S. securities exchanges, including numerous companies based in this District and elsewhere in the United States.  Compl. ¶¶ 1, 13-21.  Certain anonymized IP addresses associated with numerous unauthorized accesses were associated with a data center located in this District.  *Id.* ¶ 14.  In addition, Yermakov distributed the deceptively-obtained information to Trader Defendants, who used the information to make securities trades that were cleared through U.S.-based brokerage firms and placed on multiple U.S. securities exchanges.  *Id*. ¶ 13.  Further, the provider that facilitated CFD transactions associated with the fraudulent scheme hedged the CFD transactions by entering into transactions with U.S.-based broker-dealers, who executed trades in the underlying securities in the U.S. equity markets.  *Id.* ¶ 24.  *See SEC v. Maillard*, 2014 WL 1660024, *1-3 (S.D.N.Y. Apr. 23, 2014) (finding personal jurisdiction over a foreign CFD purchaser where, *inter alia*, the CFD transaction triggered corresponding transactions in the underlying securities on the U.S. exchange).  Accordingly, Defaulting Defendants had "adequate notice that [they] may be haled into an American court" for their misconduct, and specific personal jurisdiction exists.  *See Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368-373 (3d Cir. 2002); *In re Lernout & Hauspie Sec. Litig.*, 337 F. Supp. 2d 298, 316-19 (D. Mass. 2004).

Furthermore, in evaluating whether the exercise of jurisdiction over Defaulting Defendants is fair, reasonable, and consistent with "traditional notions of fair play and substantial justice," courts evaluate the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the judicial system's interest in

obtaining the most effective resolution of controversies, and the national interest in furthering the policies of the laws under which the plaintiff is suing. *See id.* These factors favor the exercise of jurisdiction, given the national interest in vindicating the federal securities laws and safeguarding U.S. markets, the judicial system's interest in the convenient and effective resolution of this matter, the forum's interest in adjudicating this dispute, and Plaintiff's interests in obtaining relief.

## II.   THE SEC HAS PROPERLY SERVED DEFAULTING DEFENDANTS

The SEC served Defaulting Defendants, who reside overseas (Compl. ¶¶ 16-19), through alternative means in accordance with the Court's authorization. *See* Dkt. 21. Defaulting Defendants did not plead or otherwise defend, and, on July 13, 2022, the Clerk of Court entered default as to Defaulting Defendants. Dkt. 28.

## III.   THE COMPLAINT ESTABLISHES DEFAULTING DEFENDANTS' LIABILITY

The well-pled allegations of the Complaint establish that Defaulting Defendants each violated Securities Act Section 17(a) [15 U.S.C. § 77q(a)] and Exchange Act Section 10b-5 [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder (17 C.F.R. § 240.10b-5). Further, Trader Defendants aided and abetted Defendant Yermakov's violations, and are also liable for his violations under Exchange Act Section 20(b) [15 U.S.C. § 78t(b)].

### A.   Violations of Securities Act Section 17(a), Exchange Act Section 10b-5, and Rule 10b-5 (Counts I, II)

Section 17(a) of the Securities Act prohibits fraudulent conduct by any person in the offer or sale of securities, and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder prohibit fraudulent conduct in connection with the purchase or sale of a security. *See United States v. Naftalin*, 441 U.S. 768, 772-73 (1979) (in Section 17(a), the terms "offer" and "sale" "encompass the entire selling process"); *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1466-67 (2d Cir. 1996). The elements of the violations under these sections are "essentially the same."

10

*First Jersey Sec., Inc.*, 101 F.3d at 1467; *SEC v. Weed*, 315 F. Supp. 3d 667, 675 (D. Mass. 2018).  The SEC must establish that Defaulting Defendants, in the offer, purchase or sale of securities: (1) made a material representation or omission or manipulative practice, such as a scheme to defraud, (2) with scienter, or a wrongful state of mind; and (3) the use of interstate commerce.  *Weed*, 315 F. Supp. 3d at 675.  A claim under these statutes "does not require the making of an untrue statement of material fact or omission to state a material fact," but may rely on proof of fraudulent conduct.  *CompuDyne Corp. v. Shane*, 453 F. Supp. 2d 807, 821 (S.D.N.Y. 2006) (quotation omitted); *S.E.C. v. Durgarian*, 477 F. Supp. 2d 342, 350–51 (D. Mass. 2007), *aff'd sub nom. S.E.C. v. Papa*, 555 F.3d 31 (1st Cir. 2009) ("no false or misleading statement is required, rather primary liability is based on the use of a 'fraudulent device' in connection with the sale of securities")*.*  A scheme that involves obtaining material nonpublic information through deceptive means, including the forms of deception associated with the hacking present here, and trading on that deceptively acquired information, can violate the antifraud provisions of the federal securities laws.  *See SEC v. Dorozhko*, 574 F.3d 42, 51 (2d Cir. 2009) ("computer hacking could be, by definition, a 'deceptive device or contrivance' that is prohibited by Section 10(b) and Rule 10b–5"); *SEC v. Dubovoy*, 2019 WL 6271602, at *4 (D.N.J. Nov. 25, 2019).

Further, the SEC must prove that Defaulting Defendants acted with scienter.  *Aaron v. SEC*, 446 U.S. 680, 689, 695 (1980).  Scienter is "a mental state embracing intent to deceive, manipulate, or defraud."  *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).  Scienter may be established by "a showing of either conscious intent to defraud or a high degree of recklessness."  *SEC v. Ficken*, 546 F.3d 45, 47 (1st Cir. 2008) (quotation omitted).  Sections 17(a)(2) and (3), however, do not require scienter; negligent conduct is sufficient for liability.  *Id.*

Here, the allegations of the Complaint as described above establish the elements of these

claims.  Defaulting Defendants participated in a massive fraudulent scheme that involved trading

on hacked, deceptively-obtained material nonpublic information.  Defendant Yermakov,

intentionally and through deception, hacked into the Servicers' system, obtained material

nonpublic information of the Servicers' public company clients, and communicated that

information and/or access to that information through the Servicers' systems to Trading

Defendants.  Compl. ¶¶ 3-5.  Trading Defendants intentionally monetized the deceptively-

obtained information provided by Yermakov by timely trading in the securities of the Servicers'

clients, collectively reaping over $121 million from the fraudulent scheme.  *Id.* ¶¶ 6-10, 60-70;

Hurley Decl. ¶ 11, Table 2.  Defaulting Defendants used deceptive means to hide their illegal

activities, including by using stolen credentials, anonymized IP information and other

technology, concealing their identifies and locations, trading through multiple brokerage

accounts, and lying about their trading strategy to brokerage firm personnel.  *E.g., id.* ¶¶ 43-56,

63, 122.  Thus, Defendant Yermakov and Trading Defendants were all essential members of the

illegal scheme, as the scheme could not exist without both a hacker and one or more traders.

Moreover, Defaulting Defendants' scienter in carrying out the misconduct can be inferred from

these factual allegations.  *See Valicenti Advisory Servs. v. SEC*, 198 F.3d 62, 65 (2d Cir. 1999)

(scienter may be inferred from circumstantial evidence).  The hundreds of instances of hacking

and trading on the deceptively-obtained information and use of deceptive devices to perpetrate

and conceal the scheme supports the inference that the conduct was intentional and part of a

coordinated and sophisticated fraudulent hack-to-trade scheme to obtain illegal profits.

Finally, this illegal conduct was in connection with the offer, purchase, and sale of

securities.  *See SEC v. Zandford*, 535 U.S. 813, 814, 820-22 (2002) (the "in connection with"

requirement of Section 10(b) and Rule 10b-5 is satisfied when the fraud and the securities

transactions coincide); *Dorozhko*, 574 F.3d at 44 & 46 n.3; *Dubovoy*, 2019 WL 6271602, at *4.

Accordingly, the Complaint's well-pled allegations establish Defaulting Defendants' liability under Securities Act Section 17(a), Exchange Act Section 10(b), and Rule 10b-5.

### B.    Trader Defendants Are Liable Under Exchange Act Section 20(b) (Count III)

Pursuant to Exchange Act Section 20(b) [15 U.S.C. § 78t(b)], which prohibits unlawful activity through or by means of another person, Trader Defendants are liable for violating Securities Act Section 17(a), Exchange Act Section 10(b), and Rule 10b-5 through or by means of Defendant Yermakov.  To establish this violation, the SEC must prove Trader Defendants (i) acted through or used another person to execute at least some of the actions forming the basis of the substantive violation, and (ii) acted with the state of mind necessary to establish the substantive violation.  *See SEC v. Stone*, 2023 WL 6387276, *8 (S.D.N.Y. Sept. 29, 2023).

Here, over the course of multiple years, Trader Defendants acted through and used Defendant Yermakov to deceptively obtain the material, nonpublic information in furtherance of the fraudulent scheme, and then monetized the hacked information through fraudulent trading on the information.  *E.g.*, Compl. ¶¶ 1-10, 31-123.  Trader Defendants' possession of hacked earnings releases tied to Yermakov; serving as directors of the IT Company whose infrastructure was, at times, used by Yermakov to facilitate the hacking; and communications with Yermakov regarding certain Servicer clients whose earnings announcements Yermakov deceptively obtained further demonstrate that Trader Defendants substantially assisted and acted through and used Defendant Yermakov to execute on the fraudulent scheme.  *Id.*  Thus, they are also liable for Defendant Yermakov's violations of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b5 because the conduct of Defendant Yermakov in deceptively stealing the material nonpublic information is attributable to Trader Defendants.

C.      **Trader Defendants Aided and Abetted Defendant Yermakov's Violations (Counts IV, V)**

Exchange Act Section 20(e) [15 U.S.C. § 78t(e)] and Securities Act Section 15(b) [15 U.S.C. § 77o(b)] allow the SEC to bring an action against aiders and abettors of securities fraud. *SEC v. Sharp*, 626 F. Supp. 3d 345, 398 (D. Mass. 2022) (internal quotation omitted). Specifically, "any person that knowingly or recklessly provides substantial assistance" to a primary violator, "shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided." 15 U.S.C. § 78t (e); 15 U.S.C. § 77o (b). "Because the operative language in § 15(b) is nearly identical to that in § 20(e), the standard for aiding and abetting liability is the same under both statutes. *Sharp*, 626 F. Supp. 3d at 398. To prove a violation of this section, the SEC must show (1) a securities law violation by a primary party; (2) defendant's knowledge of the violation; and (3) substantial assistance by the defendant in the achievement of the primary violation. *Id.* (internal quotation omitted). To demonstrate substantial assistance, the SEC must show the defendant "associated himself with the venture, that he participated in it as in something that he wished to bring about, and that he sought by his action to make it succeed. *Id*. (internal quotation omitted).

Here, as discussed above, Defendant Yermakov was a primary violator of Securities Act Section 17(a), Exchange Act Section 10(b), and Rule 10b-5 thereunder, and the well-pled factual allegations supporting Trader Defendants' primary securities fraud violations also support their liability as aiders and abettors of Defendant Yermakov's violations. The Complaint allegations establish that Trader Defendants knew of the fraud, personally and professionally associated themselves with Yermakov, and substantially assisted and participated in the fraudulent scheme. *E.g.*, Compl. ¶¶ 1-10, 31-123. The Complaint further alleges that they communicated with Yermakov, including about trading, profits, and at least one Servicer client whose information

had been deceptively obtained and traded on in advance of public release, and Defendant

Sladkov possessed two of the deceptively obtained releases.  *Id.* ¶¶ 36-42.  Finally, the

Complaint alleges that they traded on the information deceptively obtained by Yermakov, and

the Trading Defendants likely shared trading proceeds from the fraudulent scheme.  *E.g.*, *id.*

## IV.   THE COURT SHOULD GRANT THE REQUESTED RELIEF

Given the foregoing, the Court should issue a final judgment against Defaulting

Defendants that (1) permanently enjoins them from future securities laws violations; (2) orders

them to pay disgorgement with prejudgment interest; and (3) orders them to pay civil monetary

penalties in the amount of three times the illegal profits received by the trading at issue.

### A.   Defaulting Defendants Should be Permanently Enjoined from Future Violations of the Securities Laws

The SEC may seek a permanent injunction against further violations of the federal

securities laws, as well as other equitable relief that "may be appropriate or necessary for the

benefit of investors."  *See* 15 U.S.C. §§ 77t (b), 78u (d)(2), (d)(5).   A court may issue a

permanent injunction if the defendant's conduct demonstrates a reasonable likelihood of further

violations.  *See SEC v. Sargent*, 329 F.3d 34, 39 (1st Cir. 2003); *SEC v. China Infrastructure Inv.*

*Corp.*, 189 F. Supp. 3d 118, 132-34 (D.D.C. 2016) (granting injunction and other relief in

context of a default judgment).  When assessing the likelihood of recurrence, courts consider the

egregious or isolated nature of the violation, the degree of scienter, and the extent to which the

defendant recognizes the wrongfulness of his conduct.   *See id.*

Here, the factors weigh in favor of imposing the requested injunctions against Defaulting

Defendants.  As set forth in the Complaint and discussed above, Defaulting Defendants, acting

with a high degree of scienter, perpetrated an elaborate and deliberate hack-to-trade fraud

scheme involving hundreds of instances of hacking and thousands of illegal trades on material,

nonpublic information across numerous public companies.  By failing to appear, Defaulting

Defendants have shown no respect for the law or the integrity of the U.S. securities markets, and

they have not recognized their wrongfulness and taken responsibility for their misconduct or

provided any assurances against future violations.  To the contrary, their repeated years-long

efforts to hack into U.S. businesses and profit from that deceptive conduct by trading on material

nonpublic information, reflect their complete disregard for the federal securities laws and the

integrity of our markets.  Further, there are opportunities for Defaulting Defendants to violate

these laws in the future, as they reside outside of the United States and have demonstrated the

skills and sophistication to operate this scheme and evade detection.

Accordingly, the SEC respectfully requests that the Court enjoin Defaulting Defendants

from, directly or indirectly, engaging in conduct in violation of Section 17(a) of the Securities

Act [15 U.S.C. both § 77q(a)], and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and

Rule 10b-5 thereunder [17 C.F.R. § 240.10n-5]; and permanently restraining and enjoining

Trader Defendants from violating these provisions through or by means of Defendant Yermakov,

in violation of Section 20(b) of the Exchange Act [15 U.S.C. § 78t(b)].

## B.  Defaulting Defendants Should be Ordered to Pay Disgorgement and Prejudgment Interest

The Exchange Act expressly authorizes the Commission to seek disgorgement for

violations of the federal securities laws.  *See* 15 U.S.C. § 78u (d)(3), (d)(5), (d)(7).  The Supreme

Court has reaffirmed the Commission's authority to obtain disgorgement for violations of any

provision of the federal securities laws.  *See Liu v. SEC*, 140 S. Ct. 1936, 1940 (2020).

Construing the Exchange Act provision allowing for equitable relief that benefited investors, the

Court held that, "a disgorgement award that does not exceed a wrongdoer's net profits and is

awarded for victims is equitable relief permissible under [15 U.S.C.] §78u(d)(5)."  *Id.*

Disgorgement is a "profit-based measure of unjust enrichment" that is measured by a defendant's "wrongful gain," and is ordered to reflect the "foundational principle" that "it would be inequitable that a wrongdoer should make a profit out of his own wrong." *Id.* at 1943 (internal citation and quotation marks omitted); *see Sargent*, 329 F.3d at 40 (disgorgement and prejudgment interest are "intended to deprive wrongdoers of profits they illegally obtained"); *SEC v. Duncan*, 2022 WL 952266, at *2-4 (D. Mass. Mar. 30, 2022) (disgorgement is "meant to prevent the wrongdoer from enriching himself by his wrongs").

The amount of disgorgement "need only be a reasonable approximation of profits causally connected to the violation" and the "risk of uncertainty in calculating disgorgement should fall on the wrongdoer whose illegal conduct created that uncertainty." *SEC v. Happ*, 392 F.3d 12, 31 (1st Cir. 2004) (internal citation and quotation marks omitted); *SEC v. Navellier & Assocs. Inc.*, 2021 WL 5072975, *1–2 (D. Mass. Sept. 19, 2021) (applying this standard after *Liu*). In addition, "[c]ourts have recognized that an assessment of prejudgment interest, like the disgorgement remedy, is intended to deprive wrongdoers of profits they illegally obtained by violating the securities laws." *Sargent*, 329 F.3d at 40 (internal citation and quotation marks omitted); *see SEC v. Druffner*, 517 F. Supp. 2d 502, 512 (D. Mass. 2007). Prejudgment interest is often calculated for the entire period from the time of a defendant's unlawful gains to the entry of judgment, but courts may exercise discretion in crafting an appropriate prejudgment interest period. *See Spencer Pharm. Inc.*, 2015 WL 5749436, at *7 & n. 6 (citation omitted).

Here, the Court should order Defaulting Defendants Rumiantcev, Irzak, and Sladkov[4] to pay disgorgement in the amount of unlawful profits each obtained on trading for the full period

---

[4] The SEC is not seeking disgorgement from Defendant Yermakov given the limited ability to quantify the illicit profits he obtained without additional discovery.

when illegal trading stemming from their securities law violations was identified, plus

prejudgment interest ("PJI") through October 31, 2023[5] as follows:

1) Defendant Rumiantcev: $2,590,406 (disgorgement: $2,192,460, PJI: $397,947);

2) Defendant Irzak: $12,001,728 (disgorgement: $10,023,605; PJI: $1,978,122); and

3) Defendant Sladkov: $60,632,546 (disgorgement: $50,864,250; PJI: $9,768,297).

*See* Hurley Decl. Tables 2, 3.  These amounts were determined by calculating the gross

*MacDonald* profits on trades around earnings events based on hacked information.[6] *See id.* ¶¶ 9-

15.

### C.     The Court Should Order Defaulting Defendants to Pay a Civil Penalty

The Court should impose treble penalties on Defaulting Defendants pursuant to Section

21A of the Exchange Act [15 U.S.C. § 78u-1].  Under Section 21A, whenever any person

commits a violation involving the purchase or sale of a security "while in possession of material,

nonpublic information in . . . a transaction on or through the facilities of a national securities

exchange or from or through a broker or a dealer," the SEC "may bring an action in a United

States district court to seek, and the court shall have jurisdiction to impose, a civil penalty to be

paid by the person who committed such violation[.]"   15 U.S.C. § 78u-1(a)(1)(A).  The penalty

amount "shall be determined by the court in light of the facts and circumstances, but shall not

exceed three times the profit gained or loss avoided as a result of such unlawful purchase, sale, or

communication." *Id*. § 78u-1(a)(2); *Happ,* 392 F.3d at 32 (identifying factors for consideration).

---

[5] This end date allowed for a set calculation of prejudgment interest for Commission approval.
[6] In insider trading cases, the disgorgement amount is "generally the difference between the
value of the shares when the insider sold them while in possession of the material, nonpublic
information, and their market value 'a reasonable time after public dissemination of the inside
information.'" *Happ,* 392 F.3d at 31 (quoting *SEC v. MacDonald*, 699 F.2d 47, 54 (1st Cir.
1983)).

Other courts have imposed treble penalties under Section 21A in cases involving similar hack-to-trade or other insider trading schemes.  *See, e.g.*, *Zavodchikov*, 2019 WL 3451501, at *7 (default judgment with maximum penalties pursuant to Section 21A in hack-to-trade case); *SEC v. Hong*, No. 16-cv-09947, Dkt. 33 (S.D.N.Y. May 5, 2017) (same); *see also SEC v. Rajaratnam*, 918 F.3d 36, 47 (2d Cir. 2019) (treble penalties under Section 21A in insider trading case).

Here, a penalty under Section 21A of three times the profits is appropriate to hold accountable the perpetrators of this egregious securities fraud scheme and deter potential future defendants from engaging in this misconduct.[7]  Defaulting Defendants acted intentionally in a massive hack-to-trade scheme—stealing and trading on material non-public information on hundreds of occasions over multiple years—reaping millions of dollars in illegal profits.  They engaged in concerted deceptive tactics to perpetrate the scheme and avoid detection, and by failing to appear, they continue to fail to acknowledge or take responsibility for their misconduct.

Thus, for Trader Defendants, the Court should impose the following civil penalties, which reflect three times each Defendant's ill-gotten gains (the disgorgement amounts above):

1) Defendant Rumiantcev: a civil penalty in the amount of $6,577,380;

2) Defendant Irzak:  a civil penalty in the amount of $30,070,816; and

3) Defendant Sladkov:  a civil penalty in the amount of $152,592,749.

In addition, the Court should impose civil penalties against Defendant Yermakov pursuant to Section 21A in the amount of $365,771,703, which reflects three times the total profits amount of $121,923,901 on all trades associated with this hack-to-trade scheme.  See Hurley Decl. at ¶ 11, Table 2.  *See Rajaratnam*, 918 F.3d at 42-44 (affirming treble civil penalty

---

[7] Treble penalties are in line with both second- and third-tier penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

based on all trading profits from scheme).  It is appropriate to seek a penalty against Yermakov

under Section 21A based on all trading profits stemming from the securities law violations

because Yermakov's conduct was essential to the entire scheme.  Absent his extensive hacking,

through which he stole hundreds of earnings releases over a period of years, the scheme would

not have happened.  *See SEC v. Dubovoy*, *et al.*, No. 15-cv-06076, Dkt. 438 at 9 n.14 (D.N.J.

June 23, 2021) (default judgment imposing treble penalty under Section 21A against hacker

defendant based on all the profits generated by the traders who benefitted from the stolen

information).  A significant penalty is necessary to address the serious misconduct and serve as a

deterrent.

## CONCLUSION

Accordingly, the SEC respectfully requests that the Court grant the SEC's Motion and

enter default judgment against each Defaulting Defendant as set forth in the proposed order.

Dated:  December 14, 2023                    Respectfully submitted,


                                              /s/ Jennifer L. Farer_____
                                             James P. Connor
                                             Jennifer L. Farer
                                             U.S. SECURITIES AND EXCHANGE COMMISSION
                                             100 F Street, N.E., Washington, DC 20549
                                             Tel: 202-285-1516 (Connor)
                                             Tel: (202) 551-5072 (Farer)
                                             connorja@sec.gov
                                             farerj@sec.gov

                                             *Counsel for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

I, Jennifer L. Farer, certify that on December 14, the foregoing was filed using the

Court's CM/ECF system, which constitutes service upon all registered ECF users, including

counsel for Defendant Vladislav Kliushin.  In addition, copies of the foregoing were sent to the

other Defendants at the following email addresses:

| Defendant | Email Address |
|---|---|
| Nikolai Rumiantcev | nr@m13.su |
| Mikhail Irzak | mikka777@yahoo.com |
| Igor Sladkov | isladkov@mail.ru |
| Ivan Yermakov | i.s.ermakov@yandex.ru |

/s/ Jennifer Farer_____
Jennifer L. Farer

21